Please call the next case. 113-3234, Jerry Campbell v. Buckler, Inc. Counsel, you may proceed. Good morning, Justices. Counsel, my name is Kevin Bucker, and I represent the appellant, Jerry Campbell. This is a case involving an Illinois resident who was an over-the-road truck driver and is injured out-of-state. And the issue is whether or not the Illinois Industrial Commission has jurisdiction over that injury. And this Court, as well as the Supreme Court, has addressed this issue. In the Mahoney case and the 2006 Supreme Court case, the place of contract for hire is the sole factor in determining whether or not the Illinois Workers' Compensation Commission has jurisdiction for an out-of-state injury. But to refine it further, it isn't just the contract, and I think it becomes the central issue in this case, is it's where the contract for hire was made. Where was the last act done necessary for the formation of the contract? Absolutely. Because there's a lot of different steps involved. Correct. So tell us where the last act necessary for the formation of the contract occurred. Well, the last act necessary was here in Summit, Illinois. And that was tanker truck training that was required to be done here at the Quality Control Center plant in Summit, Illinois, because the employer is a franchisee of quality carriers. They're exclusively hauled on behalf of quality carriers. And so there's a lot of steps that go into the hiring process. There has to be a background check. There has to be a drug test. There has to be a physical. There has to be an over-the-road test. All of that is done in Indiana. And all of that is done before the tanker truck training here in Summit, Illinois, because the employer doesn't want to go through the expense of the training if they're not going to pass a background check. Now, that makes some logical sense. But tell us what evidence or testimony establishes the last act necessary for the formation of the contract was the training in Summit? You don't have to take my word for it or the petitioner's word for it. It was the respondent's general manager, the only one who testified. Mr. Pruden? Mr. Pruden. And he testified, and we have it cited in our brief in the record at 137. So the last thing that has to be done before someone is hired is they take the training and pass it, correct? Correct. Question, and that's done here in Illinois, correct? Yes. It's one of Quality Carrier's training centers. And we went on to refine it. Why is it done that way? Why is everything else done in Indiana and the last thing done here? And they said, and this is at 137, so you wouldn't allow Mr. Campbell to do any of the training in Summit, Illinois, if you didn't have any of the other documentation completed and all the reviews done because you didn't want to pay for the training, correct? Yes. So the training was the last thing that needed to be completed before Campbell was hired, correct? Yes. And that training would have been done between November 25th and December 3rd when he was hired, correct? Was he somewhat equivocal on that? Yes. Because your opponent may point to that. Wasn't he somewhat equivocal? Didn't he say, yes, but he had to come back to Indiana to complete some other paperwork or something? Didn't he? No, this was the testimony. And, in fact, if we look at the paperwork. Wait a minute. Hold on. I think you're missing a step here. Okay. The arbitrator made a finding, and his finding is entirely correct. The person who gives him the test here in Illinois does not hire him. He is not hired until the person who administers the test here in Illinois notifies Indiana and then Indiana hires him. So he doesn't get hired merely because he passed. He doesn't get hired by the person who gives him the test here in Illinois. He doesn't get hired until those results are reported to the person, Purnell I think his name was, in Indiana, and then he's hired. Now, I agree with you. They let him drive a truck before he filled out the paperwork, so the paperwork is not part and parcel of the hire. He went to work before that paperwork was filled out. Right. But the question is, is the notification to Indiana the last step necessary to be hired? And if it is, that notification went to Indiana, not Illinois. Well, the notification goes to Indiana, but then the conversation takes place when they call him up and say, when he is here in Illinois, and say, fine, you've passed. You've got your first call dispatched, and they'll give you your first load. And that was done while the petitioner is here in Illinois is when they make that offer of employment. So you're saying it's whether or not he passes the courses or, as Justice Hoffman says, the additional step, it's contingent on being notified by quality control to the company he successfully completed it. When that act is done, it's done from Illinois, he's in Illinois, and it's notified to Indiana. Right. He's hired at that moment, and he's physically in Illinois. Right. That, to me, doesn't wash, because you could do every step necessary. You could be an Illinois resident, do every step necessary to be hired by an Indiana company, take your test in Indiana, do everything, take your drug test, and when they're waiting to determine whether they're going to hire you, they get the results of your drug test, so they call you at your house in Illinois and say, you passed your drug test, we're going to hire you. And that call is coming from Indiana. Are you going to tell me that's an Illinois hire? If everything's done in – I'm sorry. Everything's done in Indiana. Everything's done in Indiana. Except they call him and he's in Illinois and tell him he's got the job. Are you going to tell me that's an Illinois hire? Well, that's what the case law says. No, it doesn't. Well, last act necessary to form the contract is the call comes in to Illinois, so what do companies have to do now to avoid this? Tell the guy, come to Indiana, we'll tell you whether you've got a job. That's silly. No, come on. Everything was done in Indiana. The man worked in Indiana, he filled out his papers in Indiana. I'm giving you an example where everything happens in Indiana. Training, everything. The only thing is that after they get the results of the drug test, they call the guy in Illinois and say, okay, you've got a job. And you're going to tell me that's an Illinois hire? Well, I think that's a little different situation than we have here, but the issue is they tell them you have a job except you have to take this training. No question. No question. And the training takes place in Illinois. And if the completion of the training meant that he had a job and the offer is made at the time the training is completed, I'd agree with you. But the arbitrator found something, and Purnell testified to that. The individuals who evaluate and conduct the training determine whether he passed or failed do not extend the offer. The offer was never extended in Illinois. It wasn't until they called Indiana that Purnell then picks up the phone and says, you've got a job, go pick up a drug. But that's the same discussion that you just had earlier, where the receipt of the phone call shouldn't be determination of where the jurisdiction comes from. Why not? Because that's the last act necessary for him to get the job. It's for them, according to Purnell, he's got to receive the phone call telling him he passed. Then he gives him the job. But that's not the finding that the arbitrator made. Because, in fact, the individuals that conducted and evaluated the training and determined whether Klayman passed or failed did not extend an offer of employment to the Klayman. The Klayman called the facility in Indiana and spoke to Mr. Pruden. He was directed by Pruden to report to the terminal in Indiana. And Pruden testified that until he gets that call from Illinois telling him he passed that test, it doesn't give him a job. I believe Pruden's testimony is what I just read, which is the last act necessary. And I don't know how I can ask the question other to elicit the answer. What is the last act necessary? He didn't say, I have to receive a phone call and then direct them to Indiana and fill out some paperwork. He testified very clearly the last act necessary was the training and the successful completion of the training. Aside from that, Pruden admitted on cross, didn't he, that the Klayman was hired on December 3, 2002, correct? He did. 2002 was the date he passed the training, correct? December 3, 2002 was the date. And where was the Klayman at when he passed the training? Summit, Illinois. And where the results of that test were reported to the facility terminal in Indiana, and then the offer of employment was then able to be extended to the Klayman. Well, the testimony. That's what he found. Well, the testimony is. Without that call, I can't hire him, right? No, the testimony is without the passing that it can't hire him. Well, wait a minute. Wait a minute. He testified specifically that until he gets the call that the man passed, he won't give him the job. He's got to get a call from somebody. Pruden is the one that hires. Pruden is only in Indiana. Pruden isn't in Illinois. Right. Pruden cannot know whether this guy passes a test until he gets a call from Illinois. And he's saying that call is then a hacker. And the reason why I disagree with your analysis there is because we don't know if it was a call. We don't know if it was a fax. We don't know if it was an email. Would it make a difference? He doesn't remember how that takes place. Well, it didn't come by carrier pigeon. But we don't know. He may have been in that facility. He may have been here. We are assuming that everything is received in Indiana, but he doesn't recall any of that. I don't think that's what Pruden said. Pruden doesn't recall any of the fax and circumstances. The only thing that we have is the documents that we have from the respondent and his recollection of how that process goes. And so we don't have any specific indication of how they were notified. The claimant testified he called the dispatcher. Absolutely. And said, I passed. And the dispatcher said, come in and pick up the keys. Pruden wasn't even involved before he started working, according to the claimant. Right. And Pruden said, I don't remember any of it. Exactly. Here's how I usually do it, but I don't know how it happened this time. So there wasn't any call or fax or anything as far as we know. We don't have any evidence of that. Right. We have a process that is generally done, but we don't have anything specific that was done in this case. So could he have picked up that truck and gone to work for this employer, assuming his testimony is the one we're going to accept or the commission accepted, if he did not call the dispatcher and tell them he passed? And the answer to that is no. Could he? He could not have gotten that truck. If Indiana was not informed that he had passed that, by whatever means, he couldn't have gotten that truck, he couldn't have been hired. And so my question is, because you've got a situation here where virtually nothing happened in Illinois. This has no connection to Illinois whatsoever other than one driving test. And because our rates are much higher than Indiana's rates, we understand why he wants to make this in Illinois higher. But the question that I have is, really, ought we be doing this? If everything happens in Illinois and you're going to go to or in Indiana, you're going to go to work for Indiana, well, then it's the Indiana rates that you should get. But that's not the situation that we have here. What we have here is we have a truck driver that drives throughout the country. Cortico just responded. They've already accepted the fact that they may be subject to jurisdiction here in Illinois. If this accident happens in Illinois, they're stuck. No question about it. I don't care if he was hired and was Virginia. If the accident happens in Illinois, they're stuck. And so to say that it's unfair to them, this is the law. This is what we have from the Coucher case. The Coucher case, we have the same situation. I'm hired here in Illinois. They call me. I call them up and say, I'm looking for a job. And they say, hey, your job search is over. We got a job for you. But everyone agrees that to take that job, he has to pass a drug test in Indiana. And that's the last act necessary to take that drug test in Indiana. Respondent agrees. Agrees that that's the last act. And the respondent agreed that that was the last act. And so this court said, well, that's the last act. It's in Indiana. You may have gotten an offer to be hired here in Illinois, and there's an employment contract here, but it's not completed until that drug test takes place in Indiana. So what you're saying is, what was the last act necessary for the hire? It was passing of the training in Illinois. In Illinois, it was where the last act took place, not where it was communicated to. Right. I mean, and that's the testimony that we have from respondent. And so we can speculate about a bunch of different things, but the only way I can elicit that testimony is to ask them, what was the last act necessary? And when they say it happens here and some in Illinois, then the court is required to say the test that we use is what is the last act. And that's not what was done by the arbitrator and the commission. What the arbitrator said is, clearly, with the exception of training regarding loading and loading tankers, the contract for hire was made in Illinois. Well, clearly, that's the wrong test. The issue isn't, we're going to look at all of these things and ignore the last act that was done. You said the contract was made in Illinois? The contract for hire was made in Indiana. Okay, you said in Illinois. Excuse me, if I said Illinois, I apologize. So basically, your argument is the arbitrator used the wrong test under the law and used a totality of factors test, perhaps, instead of the last act. The majority of acts appears to be the standard that it was used, and that standard has been rejected by this court. And I think the Cowardly case is the case that we should be looking at and following, because that's the one that tells us it doesn't matter what happens before, it's that last act that we need to look at. And we don't have to look at, you know, the respondent now has come up with an argument, well, maybe there was a rehire or something like that. All of their documents, everything that they've submitted, indicates that December 3rd was when he was hired. And we have a series of documents that indicate. I don't even think that's an argument. I wouldn't even waste your time on that. The man picked up the truck on the 3rd. He did the delivery on the 3rd. He didn't do it gratuitously, and he didn't do it as an independent contractor. He was out answering an employee that day. So what I would ask is that this court apply a proper standard. The last act necessary was in Illinois. That's your argument. That's it. Thank you very much. Thank you, counsel. Counsel may respond. Thank you. Good morning, Your Honors. James A. Hauer on behalf of the defendant. Good morning, counsel. I think counsel made my argument, actually, when he was up here preceding me. I'd like to focus on your questioning regarding the last act necessary to give validity to the contract. I want to make one point first. Counsel's brief discusses the standard of review, and he places this as a de novo standard. And I respectfully submit that this is not de novo. He relies on the Mahoney case in which the key element is this. There was no dispute as to the key fact in that case. That individual was hired in Illinois. There was no statutory construction necessary in our case. The court, preceding Your Honors, correctly interpreted and looked at and utilized sections 1B2 and 1B3 of the Illinois Workers' Compensation Act. That is the statute in effect. There is no disagreement here as to construction of that. The statute is clear when it states different factors necessary to establish jurisdiction in Illinois with employment. Everything that was discussed up here preceding me is a question of fact, and therefore I would submit that this is a manifest weight review. Kennedy, can I ask you a question? Sure. If an individual goes to a company and the company has a spot for a truck driver and he says, I want that job as a truck driver, and they enter into a contract and it says, we will hire you as a truck driver for $55 an hour, commencing on such and such a date. If you pass a drug test in Illinois next week, and this is done in Indiana, and the guy says, I accept, where is the contract of hire entered into? And the training or drug test you mentioned is in Illinois. Is in Illinois. But this contract is entered into between the two of them, this agreement, this offer and acceptance is done in Indiana. Where is the contract for hire? I would say and submit that in your scenario, Your Honor, that all the conditions necessary to give validity to the contract of employment, the last act necessary was, as you state, the drug test in Illinois. You really think so? I think the contract was entered into in Indiana. And if he passed that drug test in Indiana and they didn't give him a job, he could sue them. Okay. Well, I think the facts are different here, though. What counsel is focusing on is one or two lines of testimony by Mr. Pruden. Actually, that was a softball. I fed you. Okay. Go ahead. Well, Mr. Pruden's testimony upon counsel's questioning called for a legal conclusion. And he asked him, what's the last act necessary? Well, he's taking an event out of a chronology and stating that the last act necessary was the training in Illinois. That's the only thing that occurred in Illinois. We understand that. That doesn't make any difference. I agree. The question is, where was the contract entered into? All parties agreed that the contract was entered into in Indiana in this case when, in terms of simple contract law, offer acceptance consideration. In your scenario, you had already pinpointed the dollar amount, things of that sort. Mr. Campbell did not come to a meeting of the minds on all these issues in a contract until he showed up in Indiana. He went there. Mr. Pruden was never in Illinois, or at least there's no evidence to suggest he was in Illinois. Everything occurred in Indiana. That's what the evidence suggests. You're wrong. That's what the evidence gives me. One second. I just want to correct something. You're wrong. This man didn't agree on the price or the change of the price until after he had already taken a load. This guy was their employee long before that ever happened. He was their employee on the 3rd of December, not the 6th. So my question is, is the training in Indiana a condition proceeding to the formation of a contract, or is it only an element of a contract? And so in the case that I gave you, that contract was entered into in Indiana. In this particular case, the argument could be made there is no contract because there's no offer until he goes to Illinois and does what he's supposed to do. That's entirely different. Well, I would, I would. I'm sorry to interrupt. No, go ahead. I would just beg to differ because the offer and the parties stipulate, well, stipulated, testified to that the contract was entered into on December 3rd. Whether you say it was December 3rd or December 6th, and it's unclear because the testimony is very ambiguous as to whether or not he did take a load on December 3rd and then come back December 6th and say, hey, wait a minute. I'm only making 22 percent as opposed to 23 percent. Who would have had a record of whether he took that load or not? Well, it would have been the Respondent, the employer. Did the Respondent introduce any records one way or the other? We did not have any records. Was there anything that contradicted his testimony that he took that load? No, there was nothing that I saw within the record that I believe Mr. Pruden testified to. Can't we assume then that the Respondent's records probably verified that he did take a load? Well, either way, if that is true, everything that occurred to finalize and give validity to the employment contract occurred in Indiana. Well, I understand that's not the end of your argument, but I mean on the issue of whether or not he actually took a load on the 3rd. What does taking a load, excuse me, I don't know, have to do with any of the law of where the last act necessary to give the contract validity occurs, okay? If you have a contract that is contingent on the occurrence of an event, in this case the training, right, there can't be no contract by the admission of everyone until the training is completed. Does anybody dispute that? No, but that is not the last act. Well, okay. In the mind of the company and the operations manager that was the last act, as I said, he was hired when he passed the test. The last act, contingent on him hiring, he could not have been hired until he passed the training. The training took place, he passed it on December 3rd in Illinois, correct? Well, I don't think the record is clear that that actually occurred on December 3rd in Illinois, the training, but he did go and end up in Indiana and pick his truck. Excuse me, where did the training take place then? The training took place in Summit, Illinois. That's Illinois, right? Pardon me? That's Illinois, right? Correct. And you don't know when he passed the training. There's no evidence of that in this record? The testimony is that by both parties that that training occurred somewhere between November 25th, 2002 and December 3rd, 2002. And then he shows up in Indiana. What did he testify to? He testified that as soon as he passed the test on December 3rd while he was still in Summit, Illinois, he informed them by phone that he had passed the test and they said come and get a truck. So we know when they were informed. He testified to it. There's no contradictory testimony that they were informed on December 3rd. And he picked up his truck on December 3rd. This guy was hired on December 3rd. There's no question about that. Correct. And Pruden said that as well. Correct. And I would submit to you, as Your Honor asked previously, that that phone call, everything occurred in Indiana. Well, his testimony was he informed the dispatcher. Correct. The dispatcher wasn't the person who hired or fired, right? Correct. All he was doing was saying I passed the test. Exactly. And the guy knew what to do. He said come and get a load. And as a finding of fact, the arbitrator concluded that the individuals that conducted and evaluated the training and determined whether Petitioner passed or failed that training did not extend an offer of employment to the Petitioner. That was not Mr. Pruden who was involved in that pass-fail. Yeah, we don't know what Pruden did. He doesn't know what he did involved in this. As far as we know, he wasn't even in the loop after he passed the training. He just called the dispatcher and said I passed. The dispatcher said go to work, which kind of lends credence to the idea that the last thing that had to happen was pass the training, and he's hired. No, because he had to show up in Indiana and negotiate his employment contract. No, no. That's right. When did that happen? The 6th? Well, he appeared on the 3rd, obviously, and picked up a load, according to the record. What's the compensation contract he negotiated on the 3rd? Well, and then he comes back with a load, as you point out, on the 6th. The 6th. And actually, if you look at the documents, too, there are some dated December 3rd and some dated December 6th. And he comes back and points to records that were signed by him on December 3rd with 22 percent on it and says, wait a minute, I thought I was getting 23. Are you telling me that assuming that he picked up a load and you have that evidence and he gets in an accident in Nebraska, you're going to say he wasn't hired? He wasn't hired? He's driving a truck? He's a thief? That's what you're saying. That's exactly what you're saying. No, what we're talking about here is jurisdiction. That's a legal liability. Come on. You can't hedge on this one. Either he was their employee on the 3rd or he wasn't. One or the other. When did he become their employee? On December 3rd. Okay. So he's their employee. So all this business about talking about wages on the 6th and all the rest of it had nothing to do with when he became their employee. Now the question is, where was the last act necessary for that contract of employment? Where did it occur? In Indiana. And as you pointed out, it was after Mr. Pruden, who was in charge of hiring, received notification, whether it was fax, e-mail, that this gentleman had passed his safety training for quality trucking. Quality trucking had that prerequisite. And then once that information was conveyed to Mr. Pruden in Indiana, he then had the ability to hire an individual who passed. So you're saying the communication to him, because it was received in Indiana, controls not worthy act that allowed him to get the job was done. I'm sorry, Your Honor. You're saying because the communication went to Indiana, that's the last act? No, I'm not saying that was the last act. I'm saying there was a lot more that had to occur before the contract of employment was entered into. What about this hypothetical? And tell me if this is analogous. You have an Indiana law firm, an Illinois law student. Indiana law firm negotiates with the law student for a hire and says it's contingent upon you passing the bar exam. The Illinois law student studies and takes the bar exam in Illinois, calls the Indiana law firm to inform them that he has passed the bar. Is that an Indiana hire or is that an Illinois hire? I would say that that's an Indiana hire. Why? It's similar to what transpired here. Well, I mean, pretty clearly under the case law, it's wherever the last act occurs to complete the contract of hire. Exactly. And why wouldn't passing the Illinois bar exam be the last act that occurred? Well, in Your Honor's hypothetical, there weren't a lot of facts. It was just, you know, go ahead and pass the bar exam, which is training necessary for everyone to become an attorney, training and pass the bar exam, which is training like driving the truck. The offer of employment, then, is extended in Indiana and the site of the contract of hire and the employment is in Indiana. Does it make any difference in that there is a condition subsequent to the enforcement of a contract? Does that affect the question of whether a contract has been entered into? Well, the Calgar case does talk about the simple contract law elements of offer acceptance and consideration. So if you have offer acceptance, consideration, and the contract is, though, subject by its terms to a condition subsequent, then in that particular case, the contract has already been entered into. If the condition subsequent is not fulfilled, the contract is unenforceable. Is that a proper interpretation or is it not? Well, yes, although the standard here is the last act necessary to give validity to the contract. Ah. Validity of the contract is different than the formation of the contract. Correct. So in other words, if there is a condition subsequent to be performed elsewhere, then it must be performed before the contract has reached validity. Correct. Validity is different than formation. And I believe that that is the standard as espoused by the court in Calgar. So in that particular case, the last thing necessary, the condition subsequent to him going to work would be completing the training in Summit. No. Because that's the condition subsequent. No, the condition subsequent is the negotiation of the employment contract, the showing up in Indiana, all those factors that form the validity. That never happened until after he was already the employee. I'm sorry? That never happened until after he was an employee. That happened on the 6th. Well, I think that's debatable. Your time is up. All right. Thank you. Okay. Thank you. Counsel, you may reply. Just to touch on something briefly, I think you had raised earlier, Justice, about the fairness associated with policy. Fairness. I raised it as a policy issue. It doesn't enter into this. I think Respondent really had the ability to control where this contract was formed, where the validity of the contract was. They could have sent him for tanker training and then said, well, now you've got to pass a background check and you've got to do a drug test and you've got to do all this in Indiana. So if they're smart, they reverse the order. They send him to training first and bring him back to Indiana for the drug test and then they've got it cleaned. They certainly could have. That's it. They don't have any Illinois hires. They certainly could have done that. They didn't do that because of a financial consideration. Or because they're not lawyers and they didn't know anything about Illinois law. Well, I think it was more realistic. I think there was a financial consideration for it. They didn't want to pay for the additional training. Well, it could be as simple as we don't walk around the truck, check the flares, shift it through the gears in Indiana. The act. Sure. I mean, it could be a non-expensive requirement. Absolutely. Absolutely. Unless there's any other questions, I don't have any further. No. Thank you. I don't think so. Thank you. Counsel, thank you all for your arguments in this matter. I will be taking your advisement and a written disposition will issue. Thank you. Please call the next case. 113-2923. Whitney Bowles v. O'Neill. Agreed. Before we begin, Mr. Lorenz, am I correct? Yes, it is. I see. And you're Mr. Lusak? Mr. Lusak is. I'm Mr. Lusak. I'm not an honest person. Well, I hate to suggest otherwise, but did you withdraw? How did you withdraw? Mr. Lorenz filed a motion with the industrial commission before Commissioner DeBrenn. And at that motion hearing, I appeared with Mr. Negriano. Mr. Negriano. You had already filed your appearance and filed a brief before this court. Is that correct? That's correct. Well, you have to withdraw before our court. I filed a motion. That was denied. It was denied because you didn't comply with rule 13. I filed them because of this problem with the attorney. He is bound and determined to represent himself. I filed a motion, let's say two weeks ago, to continue the oral argument. And that was denied. That was denied. Then three or four days after that, Mr. Lorenz filed his motion, or he might have filed it before, but it came up for hearing. And Commissioner DeBrenn signed it. Counsel, we don't care about Commissioner DeBrenn. I'm sorry, just a moment, Justice Hoffman. I'm just trying to tell you, please. Just a minute. Mr. DeBrenn, Judge DeBrenn, is over at the commission. Correct. You're before this court. Correct. You're in the Illinois Appellate Court. Correct. There are procedures to follow to withdraw as counsel. We do not see them here. Well, I'm put in a position, Your Honor, that if I stand before you and argue this case, then this gentleman is going to have an ARDC complaint against me tomorrow. I don't know what to do. He could have discharged you. Hold on. Hold on. Where did either of you get the idea that you can go to the Illinois Industrial Commission and do something while we have jurisdiction over this case? Where did either of you get that idea? May I respond? Hold on a second. If what you should have done, when your client told you he didn't want you anymore, you should have filed a motion to withdraw and complied with Rule 13. We have a Supreme Court rule that covers how to withdraw as a lawyer. Your Honor, I did file a motion. Where? With the clerk, and I sent it to the third district, to Therese. This is a first district case. There's no motion recorded on our motion sheets that you filed a motion to withdraw. I don't even know if I brought it over. I can look through my file. You filed a petition to continue the oral argument. We had that. Let me look through my file. Am I permitted to look through my file? I don't know if I got it. Well. But Mr. Lorenz knows that I filed it. I would like, if I may, respond to the Justice Hall. Yeah, go ahead. Okay. The answer to the question why the motion by myself was filed to clarify representation before the commission, notwithstanding the pendency of this appeal, is that I received communication from the claimant directly by certified mail and counsel for a claim it did as well, and in that communication, amongst other things, there was a request, really the verb is demand, to communicate directly with him, which obviously I'm certain this Court would agree could not occur. Something had to be done. Something wasn't being done. Well, but here, you guys got to understand something. I mean, this is unnerving. Once we get jurisdiction over a case, nobody has jurisdiction to do anything in this case but us. And motions have to be filed before this Court. That arbitrator had no authority to enter the order he entered. He has no jurisdiction over the case anymore. Okay. You couldn't have gone to the circuit court. They didn't have jurisdiction over it. Your answer to that is, if that man was still represented by counsel and he communicated with you directly, you don't respond to him. And that was my answer. And you do nothing. And that was my answer. Instead, two of you go over there and get this arbitrator or whoever it was to start And now we've got a case set for orals. I don't know. It's the decision of this Court. I believe that we will pass the orals. You will be hearing from the Court with the dispositions. Thank you. Explain that to Mr. McNamara. I can't talk to him. Well, you better find a motion to withdraw, first of all. Right. With all due respect, I filed it. I'll find it and show it to you. Okay. The Court will stand in brief recess.